WHITNEY *against* BARTHOLOMEW.

New-Haven,
July, 1851.

Whitney
*v.*
Bartholomew.

21  213
71  410

The trade and occupation of carriage-making, or of a blacksmith, is a lawful and useful one; and a building erected for its exercise, is not a nuisance *per se*. But if such building, though erected on the builder's own land, and occupied in the usual manner, be in an *improper place*, where its use will probably result in an injury to another, this is, of itself, a *wrongful act*, for which the wrong-doer is responsible to one essentially injured thereby.

Therefore, where the plaintiff was the owner of a dwelling-house and land; and the defendant was in the occupation of a lot of land adjoining the plaintiff's land, upon which was a large carriage factory and a blacksmith's shop having several chimnies; and the shop and chimnies were placed upon or very near the dividing line of the lands of the parties; and in consequence of the location and use of the blacksmith's shop, the cinders, ashes and smoke issuing therefrom, were thrown, in large quantities, upon the plaintiff's house and land, rendering the water unfit for use, and the house nearly untenantable; it was held, that the defendant was liable for such injury.

THIS was an action on the case, to recover damages done, by the defendant, to the property of the plaintiff, by means of a carriage factory and blacksmith's shop, erected and occupied by the defendant, on his land, in the immediate vicinity of a dwelling-house and lot owned by the plaintiff.

The cause was tried, on the general issue, at *New-Haven*, *October* term, 1850.

On the trial, it was proved and admitted, that the plaintiff was the owner of the dwelling-house and land, described in her declaration; and that the defendant was in the occupation of a lot of land adjoining the plaintiff's land, upon which was a large carriage factory and blacksmith-shop, used only in the business of making and repairing carriages; that the blacksmith-shop was used for the purpose of making carriage springs and axletrees, and other work for carriages, and had several chimnies; and that the shop and chimnies were placed upon, or very near, the dividing line of the lands belonging to the plaintiff and defendant.

The plaintiff introduced evidence to prove, and claimed that she had proved, that in consequence of the location and use of the defendant's blacksmith-shop, the cinders, ashes and smoke, issuing from the chimnies of the defendant's shop, were thrown, in large quantities, upon the plaintiff's house and land, so that the water in her well had become

colored, and rendered unfit for use; that when the wind blew in a direction from the defendant's premises, it was impossible for her tenants, living in her house, to dry their clothes, when washed, upon her premises, without having them soiled and injured, by the cinders and ashes thrown upon them; nor could they keep open their windows next to the defendant's premises, without having the house filled with smoke, and large quantities of ashes blown into the house from the defendant's shop; that in consequence of these annoyances, she could find no respectable tenant to occupy her house; and that it stood empty, for a whole year, when the house had previously rented for 130 dollars a year, and would have continued to rent for that sum, had it not been for the injuries received from the defendant's blacksmith-shop.

She thereupon claimed, that she had been materially and essentially injured in the enjoyment of her property, by the location and use of the defendant's shop, in this manner; for which she claimed to recover damages.

But it was not proved, that the defendant had done the plaintiff any intentional wrong, except what might be inferred from his continuing to use the shop, in the manner claimed by the plaintiff; or that the defendant had used his shop for any other purpose, than to carry on his business of carriage-making and the blacksmith business, connected therewith; or that his shop was built in any improper or unskillful manner, except that it ought not to have been placed so near the dividing line of their lands, as that the natural use of it would necessarily produce the injuries of which the plaintiff complained.

The defendant thereupon claimed, that he was not liable to the plaintiff for the injuries complained of, unless he had been guilty of some wrong which occasioned them; that he had a lawful right to erect and build the factory and black-smith-shop, on his own premises; that he was not liable to the plaintiff for any injury, occasioned by the use of the factory and shop, provided due care and diligence had been used, by the defendant, to prevent the injuries complained of; and provided the factory and shop had been used by him, in a reasonable manner, without negligence, carelessness, or unskillfulness; and prayed the court so to instruct the jury.

Upon this subject, the court instructed the jury, that the plain- *New-Haven,*
July, 1851. tiff could not recover, in her present suit, unless she proved, ——————
that the injuries complained of were occasioned by some Whitney
*v.*
Bartholomew. wrongful act of the defendant, or some negligence or care- lessness on his part. That an act might be lawful or wrongful, according as it affected the rights and property of others. That a man owning a tract of land, through which flowed a stream of water, might erect thereon a factory and dam, as large and as high as he pleased, and use the water in the stream, for the purpose of turning the machinery in his factory. Such acts might be perfectly legal and proper, provided he did not thereby injure the property of others. But if, by means of his dam, he raised the water of the stream so high as to overflow and injure the lands of an adjoining proprie- tor, the acts, so far as that proprietor was concerned, would be wrongful, although they might be beneficial to all the rest of the community. A similar principle applied to the erection and use of a blacksmith-shop. The defendant had a perfect right to erect, upon his own land, a carriage fac- tory and blacksmith-shop, for the purpose of carrying on his business, and might place them where he pleased, and use them as he pleased, provided he did not thereby injure the property of his neighbour. But if he placed his shop so near the dwelling-house and land of the plaintiff, and used it in such a manner as to produce a material and substantial injury to her property, such as she claimed to have proved, then the defendant would become liable for such injury.

The jury returned a verdict in favour of the plaintiff; and the defendant, claiming that the court erred in its in- structions to the jury, moved for a new trial.

*C. A. Ingersoll* and *Bristol,* in support of the motion, after remarking, that, in this case, the erection by the defendant of his factory, was lawful; and also, that the use of it, thus lawfully erected, was, in itself, lawful; contended, 1. That to entitle the plaintiff to a recovery, there must have been a careless or improper use of that which the defendant had a right to use in a proper way, in consequence of which care- less or improper use, the plaintiff had sustained damage.

The rules upon this subject are, first, where a party plain- tiff sustains damage, either to his person or his property, by

the act of the defendant, and which act the defendant had no right to do, and which it was unlawful for him to do, in such a case, the defendant is responsible to the plaintiff for the damage which has been sustained.   In such a case, the doing of the unlawful act, by the defendant, is a wrong; and for that wrong act he is responsible to any one injured by it.   But secondly, where a party plaintiff sustains damage, either in his person or his property, in consequence of an act of the defendant, and which act of the defendant was not wrong in itself, and which it was lawful for him to do, and which he had a right to do ; in such a case, the defendant is not responsible to the plaintiff, for the damage which has been sustained in consequence of such act, unless the act had been committed in an unreasonable mode, and without due care, skill and diligence.   *Parker* v. *Griswold,* 17 *Conn. R.* 288.   *Wadsworth* v. *Tillotson,* 15 *Conn. R.* 366. *Burroughs* v. *Housatonuc Rail-Road Co. Id.* 124.   *Panton* v. *Holland,* 17 *Johns. R.* 92.   *Callender* v. *Marsh,* 1 *Pick.* 418.   *Com. Dig. tit.* Action upon the case.   Nuisance, *C.*

2. That it should be left to the jury to determine whether the defendant has, or has not, exercised his rights, in an unreasonable and improper manner, or whether he has, in the exercise thereof, used due care, skill and diligence.   It is a question of *fact,* for them to determine.   6 *Shep.* 32. 15 *Conn. R.* 368. and the other cases above cited.

3. That the charge of the court was not in conformity with these principles.   Although the court told the jury, that the plaintiff could not recover, unless the damage which she complained of, was occasioned by some wrongful act of the defendant, or by some negligence or carelessness on his part; yet the court erred, in telling the jury what would be such wrongful act.   The charge is, in substance, if the act done by the defendant, in its consequences, operated injuriously to the property of the plaintiff, the defendant would be liable ; *i. e.* that the use, in itself, would be wrongful, if the plaintiff was damaged thereby—that every act committed by one man, is wrongful, if, in its consequences, another is injured by it.   This is not in conformity to the authorities.

*Dutton,* contra, insisted, 1. That from the facts in the case which were not controverted, it appears, that the defendant

used his land, in such a manner, as to injure the plaintiff. Under such circumstances, an action will lie. *First Baptist Society* v. *Schenectady & Troy R. R. Co.* 5 *Barb. Sup. Ct. R.* 79. *Lansing* v. *Smith,* 4 *Wend.* 32. *The People* v. *Albany,* 11 *Wend.* 543. *Bliss* v. *Hall,* 4 *Bing. N. C.* 183. (33 *E. C. L.* 315.) *Flight & al.* v. *Thomas,* 10 *Adol. & Ellis,* 590. (37 *E. C. L.* 182.) *Aldred's* case, 9 *Co.* 57. *Lodie* v. *Arnold,* 2 *Salk.* 458. *Burnham* v. *Hotchkiss,* 14 *Conn. R.* 317. per *Williams,* Ch. J. *Morley* v. *Pragnell,* *Cro. Car.* 510. 1 *Sw. Dig.* 521.

*New-Haven,*
*July, 1851.*

Whitney
*v.*
Bartholomew.

2. That a smith forge has been repeatedly held to be a nuisance, when so near the property of another as to annoy him. *Fish* v. *Dodge,* 4 *Denio,* 311. *Jones* v. *Powell, Hutt.* 135. *Bradley* v. *Gill,* 1 *Lutw.* 69.

3. That the injurious effect upon the property of another, of what would otherwise be a lawful business, renders it unlawful. 4 *Denio,* 316. 5 *Barb. Sup. Ct. R.* 86. *Elliotson* v. *Feetham,* 2 *Bing. N. C.* 134. (29 *E. C. L.* 283.)

4. That a new trial will not be granted, when, from the facts admitted, it appears, that on such new trial, the same verdict ought to be given.

CHURCH, Ch. J. The maxim, that every man must so use his own property as not to injure another, is known to every lawyer, and approved by every moralist. There is sometimes found a difficulty in its application.

We do not understand, by this rule of law, that, if a man uses his own, without fault or negligence, he is responsible to others for the consequences. But many circumstances may conspire to determine what is a proper use of one's own property. Some things are unlawful or nuisances *per se;* others become so, only in respect to the time, place or manner of their performance.

The trade and occupation of carriage-making, or of a blacksmith, is a lawful and useful one; and a shop or building, erected for its exercise, is not a nuisance *per se.* Nor was there any complaint, in this case, that the defendant's business was not conducted in the usual way; but it was, that the shop was erected and the business pursued, in an *improper place.* If this was so, that was a fault, or want of proper care in the defendant, which should subject him, if it

resulted in an essential injury to the plaintiff. The plaintiff was in no fault; and the question submitted to the jury, was, whether the defendant was guilty of any.

Blacksmith's shops or forges have been classed by courts, among those erections, which, by their position and use, may become nuisances. The defendant knew, when he erected his factory and shop, what effects the use of them would produce upon the near adjoining buildings and their inmates; and he must be presumed to have intended that which he might reasonably suppose would follow, and to have assumed the responsibility.

The first object of society and of the laws, should be, to protect life, health and property, and the comfortable enjoyment of them; and whatever essentially, injuriously, and unnecessarily affects these, must be wrong. They are paramount to the mere convenience of pursuing a lawful calling, in a particular place; and so the common law has considered it from the earliest times; and so the judge, on the trial of this cause, treated it. He did not say to the jury, that the factory or shop of the defendant was a nuisance; but that the plaintiff could not recover, unless the injuries complained of by her, were occasioned by some wrongful act of the defendant, or some negligence or carelessness on his part.

The defendant assumes, that, as he erected his shop and pursued his business on his own land, there could be no wrong on his part, if the business was conduced with due care and caution. Herein, we think, is his mistake; and he will find no authority to sustain that position. He had a right to erect his shop on his own land; but he must so use it, even there, as not to injure his neighbour.

Indeed, as we have said, the erection of a building on one's own land, with a purpose of its being so used that its use will probably result in an injury to others, is, of itself, a wrongful act. And whether such would be the effect, must depend much upon the nature of the business there done, and of its proximity to the residences and property of others. And therefore, it has been uniformly holden, that the placing of a swine-stye, slaughter-house, tannery, tallow-furnace, steam-engine, smith's forge, or other erection, which, in its use, will infect the atmosphere, produce unhealthy

vapours, or offensive smells or noises, so near the dwellings of others as to materially affect them, and render them either unhealthy or uncomfortable, as residences, is unlawful and wrong, and constitutes such erections, nuisances, although upon the builder's own land. And from this it results, that of trades which are lawful, some may be nuisances in cities, which are harmless in the country. *Fowler* v. *Saunders, Cro. Jac.* 446. *Regina* v. *Wigg,* 2 *Salk.* 460. *Aldred's* case, 9 *Co.* 57. *Jones* v. *Powell, Hutton* 135. *Morley* v. *Pragnell, Cro. Car.* 410. *Rex* v. *White,* 1 *Burr.* 337. *Fish* v. *Dodge,* 4 *Denio,* 312. *Meeker* v. *Van Renselaer,* 15 *Wend.* 398. *Baptist Society* v. *Rail-Road Co.* 5 *Barb. Sup. Ct. R.* 79. 3 *Stephen's N. P.* 2362. 3 *Bla. Com.* 217. 1 *Sw. Dig.* 530. *Hay* v. *The Cohoes Co.* 2 *Comstock,* 159.

In some books, it is said, that an action will not lie for consequences resulting from the reasonable prosecution of lawful business. *Broom's Maxims,* 84 2 *Sel. N. P.* 1091. 1 *M. & S.* 95. But was it reasonable that this shop, which the defendant knew would produce serious injury to the plaintiff, in its use, should be placed so near to the plaintiff's dwelling-house? And if it was not, how can it be said, that the business was either reasonably or lawfully conducted there? *Blackstone* says, that even lawful trades, producing such results as the plaintiff complains of, should be carried on, in remote places. 3 *Bla. Com.* 217.

It does not appear from this record, explicitly, whether the factory of the defendant was built before or after the erection of the plaintiff's dwelling-house; but we infer from the course of argument and otherwise, that the plaintiff's dwelling was first used and occupied; and we are not required to consider any questions which might be suggested, by a different state of facts than the record discloses.

We think the charge of the judge was right; and that there should be no new trial.

In this opinion the other judges concurred.

**New trial denied.**