JARVIS PARKER *vs.* THE UNION WOOLEN COMPANY.

42 399<br>72 682

The plaintiff's horse, which was in the habit of pulling when tied at a post, but otherwise gentle, was fastened by the plaintiff with a stout rope by the side of a public street, when a steam whistle upon the top of the defendants' factory about fifteen rods distant, was blown, as a notice to the operatives. The sound was shrill and calculated to frighten ordinary horses. The horse was frightened and pulled violently at his rope, which gave way, and he was killed. It was found that if the whistle had not been sounded the horse would not have pulled; and that if the horse had been free from the habit of pulling he would not have been killed. Held that, upon this finding, the death of the horse could not be regarded as caused by the negligence of the defendants, and that they were not liable.

A steam whistle may be so used as to become a nuisance, but it is not necessarily so.

TRESPASS ON THE CASE for damage from the negligence of the defendants; brought to the Superior Court in Litchfield County. The following facts were found by a committee.

On the fifth of December, 1871, the plaintiff was the owner of the horse mentioned in the declaration, which was not less

than eleven years old, and was kind, gentle, and safe for men and women to drive, except that he had a habit of pulling at his halter without adequate cause when hitched to a post. The plaintiff for this reason was accustomed to fasten him to a hitching-post by a large rope. On the day mentioned the horse was harnessed to a wagon, and the wife of the plaintiff drove him about three miles from the plaintiff's residence, to the village of Hotchkissville, in Woodbury, on business at a store there, and hitched him by means of a strong rope nearly an inch in diameter, to a post in the highway, and near the store.

The defendants were the owners of a manufacturing establishment at Hotchkissville, and were carrying on business at their mill near the store. Previous to July 5th, 1871, they were accustomed to give notice to their operatives of the time of beginning and leaving off work, by ringing a bell, which has ever since remained on their mill. But at that time they obtained and placed in their mill a steam whistle for the same purpose. This was convenient for the defendants, though not necessary. As used on the 5th of December, it was an ordinary whistle, not differing materially from those frequently used in other mills, but its sound was sharp, shrill, and unusual in that vicinity, and was calculated to startle and alarm horses of ordinary gentleness, not accustomed to such sounds.

The whistle was placed upon the top of the mill, fifty-five feet above the ground, and two hundred and fifty feet from the post to which the horse was hitched.

About noon on the 5th of December, 1871, while the horse was so hitched, and the plaintiff's wife was transacting business in the store, the whistle was sounded by the defendants to give notice to their operatives, as such whistles are usually sounded. The horse was not accustomed to such a sound, and by reason thereof pulled violently at his halter, which parted, and the neck of the horse was broken, and he immediately died.

If the whistle had not been so sounded, the horse would not have pulled so as to have caused his death; and if the horse had been free from such habit of pulling, he would not have been so killed.

The value of the horse was found to be $125.

Upon these facts the case was reserved for the advice of this court.

*Andrews*, for the plaintiff.

1. Upon the facts found, the use of the steam whistle by the defendants was clearly wrongful. It was unnecessary. It was sharp, shrill, unusual, and was calculated to frighten horses of ordinary gentleness. It was a nuisance. 3 Black. Com., 215, 217. Besides, it is found that the defendants have on their factory a bell which was formerly (and, we say, still might be) used for the same purposes for which this whistle is now used. Under these circumstances the use of the whistle was so negligent, inconsiderate and improper that for any injuries resulting therefrom the defendants are liable. *Sic utere tuo ut alienum non lœdas. First Baptist Church* v. *Schenectady & Troy R. R. Co.*, 5 Barb., 79; *Fish* v. *Dodge*, 4 Denio, 311; *House* v. *Metcalf*, 27 Conn., 631; *Whitney* v. *Bartholomew*, 21 id., 213.

2. The plaintiff was not guilty of negligence. His horse was kind, gentle, and safe for men or women to drive. And however much his habit of pulling may have contributed to the injury, the plaintiff is still entitled to recover unless he has been in some fault. Shearm. & Redf. on Neg., § 28. It is not negligence to drive, or have such a horse on the public highway. *Knight* v. *Goodyear India Rubber Glove Manuf. Co.*, 38 Conn., 438. The plaintiff was not guilty of negligence in the manner of using the horse on the day of the accident. His wife had taken the utmost precaution by hitching him with a large rope nearly an inch in diameter. This certainly was ordinary care; more than this is never required of a plaintiff. Shearm. & Redf. on Neg., § 32; *Baldwin* v. *Greenwoods Turnp. Co.*, 40 Conn., 238; *Beers* v. *Housatonic R. R. Co.*, 19 id., 566; *Davies* v. *Mann*, 10 Mees. & Wels., 546; *Ernst* v. *Hudson River R. R. Co.*, 35 N. York, 28; *Newson* v. *N. York Central R. R. Co.*, 29 id., 383.

*E. W. Seymour*, for the defendants.

VOL. XLII.—51

CARPENTER, J.   The right of the defendants to use a steam
whistle in the course of their business must be conceded.
*Knight* v. *Goodyear India Rubber Glove Manuf. Co.*, 38
Conn., 438.   They are bound however to use it in such a place
and in such a manner, that it shall not be a nuisance.   A
lawful business may be so conducted as to produce harm or in
jury to the persons or property of others.   In such cases the
proprietor will ordinarily be liable.   *Whitney* v. *Bartholomew*,
21 Conn., 213; *House* v. *Metcalf*, 27 Conn., 631; *Knight* v.
*Goodyear India Rubber Glove Manuf. Co.*, supra.

The use of a steam whistle is not *per se* a nuisance.   It is
not expressly found that the whistle used by the defendants
was a nuisance; but it is insisted that that fact may and ought
to be legally inferred from the other facts stated.

The case presents two questions: was the whistle a
nuisance? and if so, did it cause the injury of which the
plaintiff complains?   Both questions must be answered in the
affirmative or the plaintiff cannot recover.

We pass by the first question, and consider only the second.
Did the nuisance, if it was a nuisance, cause the injury?

It is a familiar principle in this class of cases that the plain-
tiff must show that he exercised ordinary care at the time of
the injury or he cannot recover; in other words, if his own
negligence essentially contributed to the injury it cannot be
said, in a legal sense, that it was caused by the negligence of
the defendant.   Although this is not a case, strictly speaking,
of contributory negligence, yet we think the same principle
applies.   Obviously the plaintiff must take the risk of all
known faults in the horse.   If there had been no exciting
cause and the vicious habit alone had caused its death, it is
clear that the plaintiff must have borne the loss.   According
to the report of the committee the vicious habit of the horse
and the noise of the whistle combined to produce the injury.
The finding upon this point is as follows:—" If the whistle
had not been so sounded the horse would not have pulled so
as to have caused his death; and if the horse had been free
from such habit of pulling he would not have been so killed."

Under this finding it must be conceded that the death of

the horse was caused quite as much by his bad habit as by the noise of the whistle.   This being so, the law does not attribute the injury to the whistle so as to hold the defendants liable.

We advise judgment for the defendants.

In this opinion the other judges concurred.