WILLIAM LYTTON and others *vs.* T. C. STEWARD.

## October Term, 1876.

INJUNCTION—MOTION TO DISSOLVE—ANSWER UNDER OATH WHERE OATH WAIVED.—Although the bill waives an answer on oath, the defendant may swear to his answer for the purpose of obtaining the dissolution of an injunction.

SAME—DRAINAGE OF SEWERAGE—CORRUPTION OF SPRINGS AND WELLS.—An injunction obtained, upon the filing of the bill, inhibiting the defendant from draining the sewerage of a university into a natural crevice in the rock on its own land, on the ground that there was danger that the springs and wells of the complainants might be corrupted, was dissolved upon the coming in of an answer denying the danger, and showing facts incompatible with the probable existence of the alleged danger, the statements of the bill being vague and loose, disclosing no facts from which danger could be inferred, nor a probability, but only a bare possibility, of danger.

*John A. Campbell*, for complainant.
*John Lawrence*, for defendant.

THE CHANCELLOR:—This is a bill filed by several residents in or near Harding's addition to Nashville, against the defendant, as superintendent of the Fisk University, to enjoin him from draining the sewerage of the university into a natural crevice or sink in the soil and rock on the lands of the university. A temporary injunction was obtained. The defendant has answered, and now moves for a dissolution of the injunction, upon the ground that the equity of the bill has been fully met by the answer.

The counsel for the complainants objects that, the oath to the answer being waived, the defendant cannot put in an answer under oath. He has forgotten that the general chancery rules have expressly provided that in this contingency the answer may be sworn to, without leave of the court, for the purpose of obtaining a dissolution of the injunction. Ch. Rules, vi., subsec. 1. Perhaps the defendant would have had this right without the rule. *Manchester* v. *Dey*, 6 Paige, 296.

The bill, in a very vague way, alleges that there are springs and wells, from which complainants and their neighbors

obtain the supplies of water for drinking and other purposes, in the vicinity of the sink, which is upon an elevated ridge, and that there is danger these springs and wells will be corrupted by the corrupt matter which will be poured into the natural drain, the springs being not more than 200 yards from said sink, and at least twenty feet lower. The bill also alleges that the surface drainage of the hill would become contaminated by the water from the sewer, and evaporated by the heat, to the great danger and annoyance of the residents.

The answer states that the nearest spring to the sink is 1,400 feet from it, with a deep valley between. That another spring is 1,500 feet from it, with a ridge between, the direction of the fissure and slope of rock being in an opposite direction. That the only well is 1,500 feet distant, with a high ridge intervening. That the surface water cannot be affected by the sewer, for the intention is, and has been, to cover it over with masonry and several feet of earth. That the fissure has been examined, and the dip of the rock ascertained to be such as precludes the idea of injury to the complainants in any of the modes suggested by the bill. The answer adds : " Respondent denies that any holes or openings in said fissure lead to any of the buildings, wells, foundations, or springs of complainants, or to any of the wet-weather springs in the vicinity ; nor would the seepage surface on the east side of said grounds be affected in the least by the said sewer."

This positive denial of all of the results suggested in the bill as sources of danger is certainly as definite as the allegations of the bill, and the facts upon which these denials are based are far more distinctly stated than the facts upon which the anticipated dangers of the bill are rested. Unless, therefore, there is something in the peculiar character of this case which takes it out of the general rule that, where the equity of the bill is fully met, the injunction must be dissolved, the motion of the defendant must prevail.

It is suggested that the denials are matters of opinion, and, consequently, insufficient. But the allegations of the bill are equally matters of opinion, and, for the like reason, ought not to prevail. It is obvious that, if the court is to act upon mere conjecture, the one may be set off against the other. It is true facts based upon accurate survey of the lay of the ground, and of the distances between points, might turn the scale. But, if these be looked to, they are all on the side of the defendant. The bill consists of vague generalities. The answer seems to be based upon survey, examination, and intelligent consideration of probabilities.

In *Brown* v. *Ilius*, 25 Conn. 583, the court inclined to the opinion that if, in the prosecution of a business like that of the manufacture of gas, not a nuisance *per se*, a man uses materials upon his own land which penetrate into the earth, and corrupt underground sources of supply by percolating to a well upon his neighbor's land, he would not be liable for the damage done thereby. But the weight or authority seems to be that there is no distinction between the pollution of water in a state of percolation to springs and wells, and the pollution of water in a stream, as to which the right of relief is well settled. *Hodgkinson* v. *Enner*, 4 B. & S. 240. *Stockport Water Works* v. *Potter*, 7 H. & N. 160 ; *Holsman* v. *Boiling Spring Co.*, 1 McC. 335 ; *Turner* v. *Mirfield*, 34 Beav. 390.

The question still remains, conceding the right to damages for such injury, or to an injunction to restrain its continuance, whether this court should grant an injunction before there is any injury, upon the supposition that it may accrue, or adopt the language used in *Thompson* v. *Crocker*, 9 Pick. 59, viz. : "It is safe to say that a mere theoretical injury shall never be a ground of action." It is not necessary to lay down any inflexible rule on the subject. The general rule is that a man has the right to use his own soil in any way he pleases, from the centre of the earth *usque ad cœlum*. It is for those who seek to restrain his right, to satisfy the court that his action will be unlawfully

injurious to them. A case may be supposed where this could be done in advance, although ordinarily the injury must have been already sustained. *Elmhirst* v. *Spencer*, 2 Mac. & G. 50. If, for example, the bill in this case had stated that the sink in question was known to disgorge the waters received by it through a particular channel communicating with one of the springs or wells mentioned; or that the sink ran, and the strata of rocks between which it lay trended plainly, in a definite direction, and in that direction, at a definite distance likely to be affected, was a spring or well used by the complainants, without any valley or ridge between, the court might have something tangible to base action upon. Unfortunately the bill is, in these regards, vague, general, and indefinite, and the answer, while distinctly denying the general charges, undertakes to state specific facts utterly incompatible with the inferences on which the equity of the bill is rested. The injury feared is, under these circumstances, clearly theoretical. It may, per possibility, occur, but the contingency is too uncertain and remote to form the basis of judicial action. There should be facts or great probabilities of injury, to call its tremendous machinery into operation to restrain the proprietor of land from using it legitimately for his own purposes. There are neither facts nor, upon the pleadings as they stand, probability, but only a bare possibility. This is not sufficient. *Ellison* v. *Commissioners*, 5 Jones Eq. 57. The injunction must, therefore, be dissolved.