PHILIP BIELMAN, Respondent, v. THE CHICAGO, ST. PAUL & KANSAS CITY RAILWAY COMPANY. Appellant.

Kansas City Court of Appeals, May 16, 1892.

1. **Nuisances:** LOCATION OF STOCK PENS. Stock yards are not of themselves necessarily nuisances, yet, under some circumstances, even

when well kept and cared for, they would to be so considered, as where they are located and operated alongside of plaintiff's lot and residence, and necessarily produce much discomfort and quite destroy the reasonable enjoyment of his property.

2. ———: MEASURE OF DAMAGES. Where a nuisance is such as may be removed at any time, and the damage does not go to the inheritance, the measure of damages is the loss actually sustained prior to the institution of the suit, and not for any supposed permanent damage to the real estate.

3. 'Practice, Appellate: COMMON ERROR. An appellant cannot complain of a common error.

*Appeal from the Andrew Circuit Court.*—HON. CYRUS A. ANTHONY, Judge.

AFFIRMED.'

*Jefferson Hosea* with *Spencer, Burnes & Mosman*, for appellant.

*P. Mercer* and *Booher & Williams*, for respondent.

GILL, J.—For several years prior to 1888, the plaintiff owned a house and lot in the city of Savannah, Missouri, which he occupied as a family residence. During that year the defendant railroad company constructed its stock yards and pens immediately adjoining plaintiff's residence, so near, indeed, that the pens were within twenty-five feet of plaintiff's house. Plaintiff objected, but to no avail, as the defendant, having completed the sheds, pens and yards, proceeded to, and did, use such yards and pens for keeping and feeding the hogs, cattle, etc., brought to be shipped over its road. Whereupon plaintiff instituted this action for damages, alleging in his petition "that the noise and cries of stock kept in said pens, and the noisome and unwholesome vapors arising therefrom, as so located on said lots and in said public streets, renders plaintiff's said premises and dwelling untenantable

and unfit for use and occupation as a dwelling for plaintiff and his family, and greatly depreciated its value, to plaintiff's damage in the sum of $500," etc.

The evidence on plaintiff's behalf strongly tended to support these allegations; and at the close of the testimony the court, at plaintiff's instance, gave this instruction: "The court instructs the jury that if they believe from the evidence that the defendant constructed its stock yards immediately east of and adjoining plaintiff's lots, on which his dwelling-house, occupied and used by plaintiff and his family, was situated, and that defendant used such stock yards for receiving, feeding and shipping stock, and that by reason of the noise and cries of stock kept in said yards, and the noisome and unwholesome smells and vapors arising therefrom, plaintiff's dwelling-house and premises became unfit for use and occupation, and depreciated in market value, you will find for the plaintiff, and assess his damages at such sum as you may believe from the evidence that the value of his said property was depreciated by such location and use of said stock yards, not to exceed five hundred dollars."

The defendant asked an instruction in the nature of a demurrer to the evidence, and, in addition, the following, to-wit: "The court instructs the jury that the defendant had a right to build its stock yards on its own ground, and that it is not liable to plaintiff for any damage which necessarily arose from the ordinary use of such stock yards," and they were refused.

Plaintiff had a verdict and judgment for $450, and defendant appealed.

I. The basis of plaintiff's complaint is, and must be, that these stock yards, erected and maintained almost in his door yard, constitute as to him an actionable nuisance. The defense rests on the claim that defendant has the right to conduct on its own

premises any lawful business so long as it is not *per se,* that is, necessarily and unavoidably, a nuisance. It is insisted that stock yards cannot be classed as nuisances *per se,* and that, so long as defendant maintained and operated these yards in an ordinarily careful and prudent manner, the plaintiff had no cause to complain.

It may be conceded, as seems to be defendant's position, that stock yards are not of themselves necessarily nuisances; and yet under some circumstances, even when well kept and cared for, they would be so considered. It is well understood that every one has the right to the reasonable enjoyment of his own property, and, so long as the use to which he devotes it violates no rights of another, no one has a right to complain. But as to what is a reasonable enjoyment of one's property is determinable by the circumstances in each case. What would be lawful and reasonable in one case or in one locality would be unlawful and unreasonable in another. For example, a slaughterhouse may without offense be located and conducted in the outskirts of a city, away from the abodes of its inhabitants, and in such case it would not be a nuisance, but if this same business should be operated on a residence street, and in close contact with the homes of the people, it might become a great offense and a nuisance that then ought to be abated. Wood on Nuisances [2 Ed.] sec. 2; *Craven v. Rodenhauser,* 21 Atl. Rep. 774; *Whitney v. Bartholomew,* 21 Conn. 213; *Wiley v. Elwood,* 25 N. E. Rep. 570; *Flint v. Russell,* 5 Dill. 156; *State v. Ball,* 59 Mo. 321.

In *Craven v. Rodenhauser, supra,* a late decision from Pennsylvania, complaint was made of the location of a carpet-cleaning establishment in a residence district, and there the court said: "The evidence fully justified the finding of the master that defend-

ant's carpet-cleaning establishment was a nuisance. While such establishments are not necessarily nuisances, or nuisances *per se*, they may yet become so by reason of their location. It is necessary to have carpets cleaned, and this involves a place where such work may be done; but care should be exercised to locate such establishments where they will cause the least annoyance to others. In this case the defendant selected a place immediately adjoining the complainant's house, and the dwelling was rendered uncomfortable by the dust and moths from carpets in the process of the cleaning. This was a nuisance of a very serious character. The appellants might have avoided this difficulty by selecting a different neighborhood for their operations.''

*Whitney v. Bartholomew, supra,* is also a very well-considered case. It is there said, that while '' the trade and occupation of carriage making, or of a blacksmith, is a lawful and useful one, and a building erected for its exercise is not a nuisance *per se;* yet if such building, though erected on the builder's own land, and occupied and conducted in the usual manner, be in a *improper place,* where its use will probably result in an injury to another, this is of itself a wrongful act, for which the wrongdoer is responsible to one essentially injured thereby.'' Such precedents might be here multiplied. If desired, the reader may find a great variety of such cases cited and quoted from in both of the above cited decisions.

Now, the evidence in the case at bar tended to prove the existence here of a most damaging nuisance. While it may be true that these stock yards were managed with ordinary care, and kept about as well as other well-conducted establishments of the kind, yet the operation of such business immediately alongside of plaintiff's lot and residence necessarily produced

much discomfort and quite destroyed the reasonable enjoyment of plaintiff's property. On this branch of the case, then, we think the court correctly instructed the jury.

II.    In fixing the plaintiff's damages the jury was permitted to find the difference in value of the property before and after the establishment of the stock yards. Defendant now objects to this as a measure of damages, and apparently claims that the correct measure of recovery would be the loss of rental value up to the institution of the suit, and not the supposed depreciation of the inheritance. In this we think defendant's counsel are correct. The rule seems to be that "where the damages are of a permanent character, and go to the entire value of the estate affected by the nuisance, a recovery may be had of the entire damages in one action; but where the extent of a wrong may be apportioned from time to time, and does not go to the entire destruction of the estate, or its beneficial use, separate actions not only may but must be brought to recover the damages sustained." Wood on Nuisances, sec. 869. As in *Pinney v. Berry*, 61 Mo. 360, this is a case where the nuisance "may be removed the day after the verdict, or for the continuance of which a second or third action may be maintained." In such case the plaintiff is only entitled to compensation for the loss actually sustained prior to the suit, and not for any supposed permanent damage to the real estate.

However, the defendant cannot now be heard to complain of the measure of damages adopted in this case; for as appears by the record the case was tried, and witnesses questioned by both sides without objection, on the theory that if plaintiff was entitled to recover at all the measure of his damages would be the deprecia-

tion in value of the property brought about by the location of the stock yards.

The judgment then of the circuit court is affirmed. All concur.