WILLIAM D. PICKMAN & another, trustees, *vs.* INHABITANTS OF PEABODY.

Essex. Nov. 2, 1887. — Jan. 4, 1888. DEVENS & KNOWLTON, JJ., absent.

The charter of a corporation authorized it to convey water by subterraneous pipes to a certain town. A subsequent act authorized it to conduct by subterranean pipes into their own land the waters of certain ponds, for the purposes for which the original charter was granted, and, for said purposes, to "construct, lay down, and maintain any dam or dams, pipes, fountains, or reservoirs, whatsoever, upon and over any land whatsoever." The statute also provided a remedy for any person injured "by the taking the water aforesaid." *Held*, that the corporation had no power to take the land of a third person and build a dam upon it.

HOLMES, J. This is an action of tort for entering and building a dam upon the plaintiff's land, and for flowing other land belonging to the plaintiff, on the borders of Spring Pond, in Peabody, Salem, and Lynn. The defendant, as allowed by the Sts. of 1870, *c.* 93, § 1, and 1873, *c.* 255, (Pub. Sts. *c.* 27, § 27,) has purchased all the rights and franchises of the proprietors of the Salem and Danvers Aqueduct, and justifies under the acts giving that corporation its powers (namely, Sts. 1796, *c.* 76; 1839, *c.* 114; 1850, *c.* 273); and also under the St. of 1881, *c.* 171; and sets up that the remedy, if any, is by petition under those acts.

The St. of 1881, *c.* 171, may be laid out of the case, because, if the authority given by that act applies to any of the acts complained of, we must assume that it was not pursued, as no description of the lands taken for the dam or by flowing was filed, as required by § 5. *Kenison* v. *Arlington*, 144 Mass. 456. Of the other acts mentioned, the St. of 1850, *c.* 273, is the only one relied on as authorizing what the defendant has done.

The first section of the St. of 1850 is as follows: "The said corporation are hereby empowered to conduct by subterranean pipes, into their own land in Salem and Danvers, the waters of Spring Pond and Brown's Pond, so called, and also the waters of the brook in the towns of Danvers and Salem, now dammed by said aqueduct corporation, which they now have, or may

acquire the right to take and use, for the purposes and objects for which the original charter was granted; and for said purposes may construct, lay down, and maintain any dam or dams, pipes, fountains, or reservoirs, whatsoever, upon and over any land whatsoever, subject to the following provisions hereinafter continued." Section 2 provides a remedy "if any person or corporation shall suffer damage by the taking the water aforesaid." No other remedies are provided, and the remaining sections are immaterial. See *Fay* v. *Salem & Danvers Aqueduct,* 9 Allen, 577; *Fay* v. *Salem & Danvers Aqueduct,* 111 Mass. 27.

The authority to construct dams upon any land whatsoever "for said purposes," that is, it would seem, "for the purposes for which the original charter was granted," is broadly expressed, but upon a consideration of the whole section, and of what was done under it at the time, we are of opinion that it does not justify the defendant's acts.

The purpose for which the original charter was granted is that of "conveying fresh water by subterraneous pipes into the towns of Salem and Danvers." St. 1796, *c.* 76, § 1. The power given by the St. of 1850, so far as it expressly touches the pond, is to conduct off its waters by subterranean pipes. It hardly can have been deemed necessary to dam the pond, still less to raise it above its natural level, as has been done, in order to carry off its water in this way. The only purpose contemplated by the act for which there was any apparent need of dams was to build reservoirs. The reservoirs contemplated by the act would seem to be reservoirs upon the corporation's own land, as the power given is to conduct the waters "into their own land." Nothing is said about flowing land of other people. The only provision for compensation is for damage by taking the water. When the act was passed, the company simply built a series of reservoirs on its own land, and thus things remained until 1882. It seems to us more reasonable to construe the power to build dams as limited to the scheme contemplated and carried out, and by the absence of express powers to flow and of provisions for damages caused by flowing, rather than to extend by implication the powers to flow and the remedies for the damage caused by their exercise so as to admit a right to build dams and

sluiceways at the mouth of the pond, and to carry out a new scheme which plainly never entered the mind of the Legislature.    *Judgment set aside, and case to stand for trial.*

*J. G. Abbott & C. G. Saunders*, for the plaintiffs.

*H. Wardwell*, for the defendant.