ELIZABETH DAVIS *vs.* LEONARD V. SPAULDING.

Essex.    November 1, 2, 1892. — December 3, 1892.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & BARKER, JJ.

*Diversion of Water from a Well — Easement — Deed — Percolation.*

In a quitclaim deed by A. to B. of land on which was a dwelling-house then occupied by B., this clause immediately followed the description : " together with the privilege of drawing water from a pipe laid in the ground from a well on my adjoining land to said Davis house as now used." There was no covenant of warranty against the demands of all claiming through A., who, at the time of the execution in 1878, was the owner of one parcel of thirty acres, of which the premises conveyed were a part. B.'s lot was on the northerly side of a public street, and a private way was afterwards laid out adjoining the land in the

rear. The dwelling-house was about one hundred and fifty feet from the well, on lower ground, and was supplied with water from the well by a pipe by gravitation. In 1890, C. took from A. a warranty deed of a lot on the private way opposite B.'s, but east of the well. The westerly line of C.'s land was about fifteen feet from the east side of the well, and no portion of the pipe or well was on his land. The ground at the mouth of the well was about six feet higher than the surface of C.'s land. On June, 1891, C. constructed by excavation on his land a reservoir, the southerly side laid up in brick and the northerly in stone, the bottom of which was a foot lower than the bottom of the well. This reservoir, which was about twenty feet from the well, was used to supply water to C.'s factory on other premises by a four-inch pipe until November, 1891, when C. discontinued its use. B.'s house was supplied with water from the well, until September, 1891, when B. connected the house with the public aqueduct. In an action brought by B. against C. for diversion of water from the well, the evidence tended to show merely that water which would have percolated into the well save for the construction of the reservoir was, in consequence of its construction and use, caused to percolate into it, and so cut off from the well. B. did not contend that he had an action unless C. took his land charged, by the operation of B.'s prior deed from the same grantor, with an easement in favor of B.'s land. *Held,* that the language of the clause in question in the deed from A. to B. was satisfied by holding that it gave the plaintiff the right to draw water whenever that portion ·of land designated as the well, remaining intact as a structure adapted to receive and hold such water as might percolate into it, contained water which would gravitate to the house through the pipe; and that the finding by the Superior Court for the defendant was rightly ordered.

Tort, for the alleged diversion of water from a well. The writ was dated September 4, 1891.

Trial in the Superior Court, without a jury, before *Richardson,* J., who ruled, as matter of law, that on the facts, if proved, the plaintiff could not recover, and found for the defendant, and reported the case for the determination of this court. If the ruling was correct, final judgment was to be entered for the defendant; otherwise, a new trial was to be ordered. The facts appear in the opinion.

*H. N. Merrill,* for the plaintiff.

*B. B. Jones,* for the defendant.

Barker, J. The conveyance to the plaintiff was of land on which was a dwelling-house then occupied by her, and this clause immediately followed the description of the land: " together with the privilege of drawing water from a pipe laid in the ground from a well on my adjoining land to said Davis house as now used." The conveyance was a quitclaim deed, with habendum of " the granted premises, with all the privileges and appurtenances thereto belonging," and with a covenant

to warrant and defend against the lawful claims and demands of all persons claiming by, through, or under the maker of the deed.   It was executed on January 1, 1878, its maker being then the owner of some thirty acres of land, in one parcel, of which the premises conveyed were a part.   The plaintiff's lot was on the northerly side of a public street, and was about ninety and one half feet deep, and eighty-five feet wide.   The dwelling-house was on lower ground than the well, about one hundred and fifty feet distant from it, and was supplied with water from the well by gravitation, by means of a pipe laid from the well to the house.   A private way was afterwards laid out adjoining the plaintiff's land in the rear, and on November 26, 1890, the defendant took from the same grantor a warranty deed with a covenant against encumbrances, conveying about six thousand square feet of land, situated on the private way opposite the plaintiff's lot, but east of the well.   The westerly line of the defendant's land is about fifteen feet from the east side of the well, and no portion of the pipe or well is upon his land.   The natural surface of the ground at the mouth of the well is about six feet higher than the natural surface of the defendant's land. In June, 1891, the defendant excavated and constructed on his land a reservoir about fifty feet long, from four and one half to five and one half feet wide, and about six feet deep, the bottom of which is about one foot lower than the bottom of the well. The southerly side of the reservoir is laid up in brick, and the northerly side in stone.   At the nearest point it is about twenty feet from the well, and it is in the lowest part of a small valley, with hills on the north, east, and west, the rise of the ground on the north being more gradual than on the east and west.   The defendant built the reservoir to supply his shoe factory, on other premises, with water, and in June, 1891, connected the factory with the reservoir by means of a four-inch pipe, and supplied the factory with water from the reservoir until November, 1891, when he discontinued its use.   The plaintiff's house was supplied with water from the well until September, 1891, when she disconnected the pipe, and connected the house with the public aqueduct.   Her evidence tended to show that, by reason of the defendant's construction and use of the reservoir, the supply of water had been diverted from the well,

and the well rendered useless, so that she was thereby compelled to obtain water for the house from another source. The evidence did not tend to show, and it is not contended, that the defendant interfered with or injured the well as a structure, or the pipe leading from it to the house, nor that he diverted any underground stream or water flowing in a defined channel; but merely that water which would have percolated into the well save for the construction of his reservoir was, in consequence of its construction and use, caused to percolate into it, and so cut off from the well. Nor did the evidence tend to show any malicious or wanton injury, although it might properly be inferred, from the defendant's acts, that he intended to obtain a supply of water by means which might naturally bring to the reservoir water which might otherwise percolate into the well. The plaintiff does not contend that she has an action unless the defendant took his land charged, by the operation of her prior deed from the same grantor, with an easement in favor of her land.

It was held in *Greenleaf* v. *Francis*, 18 Pick. 117, that a landowner, whose full rights as such have not been diminished, may, in order to obtain a supply of water for himself, dig a well on any part of his land, although he thereby cut off the water from his neighbor's well. To this extent, the case of *Greenleaf* v. *Francis* is undoubtedly law, and is in accord with the great weight of authority elsewhere; *Acton* v. *Blundell*, 12 M. & W. 324; *Broadbent* v. *Ramsbotham*, 11 Exch. 602; *Chasemore* v. *Richards*, 2 H. & N. 168, and 7 H. L. Cas. 349; *Regina* v. *Metropolitan Board of Works*, 3 B. & S. 710; *Hodgkinson* v. *Ennor*, 4 B. & S. 229; *Roath* v. *Driscoll*, 20 Conn. 533; *Brown* v. *Illius*, 25 Conn. 583; *Chatfield* v. *Wilson*, 28 Vt. 49; *Clark* v. *Conroe*, 38 Vt. 469; *Wheatley* v. *Baugh*, 25 Penn. St. 528; *Haldeman* v. *Bruckhart*, 45 Penn. St. 514; *Frazier* v. *Brown*, 12 Ohio St. 294; *Pixley* v. *Clark*, 35 N. Y. 520; *Delhi* v. *Youmans*, 45 N. Y. 362; *Bliss* v. *Greeley*, 45 N. Y. 671; *Phelps* v. *Nowlen*, 72 N. Y. 39; *Chase* v. *Silverstone*, 62 Maine, 175; *Chesley* v. *King*, 74 Maine, 164; nor is it in conflict with the doctrine held in the cases of *Bassett* v. *Salisbury Manuf. Co.* 43 N. H. 569, and *Swett* v. *Cutts*, 50 N. H. 439; for such a use of land would be reasonable and justifiable, even under the view of the law of percolating waters taken in the cases last cited.

The cases cited show that it is very generally held that water percolating under ground, and not running in a definite stream or watercourse, is in law a part of the land itself, in the same sense that earth, gravel, stones, or minerals of any kind are constituent parts of the land, and is the absolute property of the owner of the land, in the same way, and to the same extent, that the other constituent parts of his land are his absolute property; so that he has the same right to keep it from passing from his land by reason of the operation of natural causes, and to separate it from the other constituents of the soil, and to use it on the land or elsewhere, that he has to keep, or to mine or quarry, and use or sell sand, soil, clay, ores, or any other constituent part of the land. Nor, if itself land, can it pass by a deed of other land as appurtenant to the other land conveyed.

The word " well," as a general term of description in a deed, designates the portion of land under and occupied by the excavation and its surrounding retaining walls, and by any structures or appliances built upon the land to facilitate its use, and also the water actually at any time in the excavation. *Johnson* v. *Rayner*, 6 Gray, 107. *Mixer* v. *Reed*, 25 Vt. 254. In the view of the doctrine above referred to, a well fed only by percolating underground water operates to separate and win from the surrounding soil, or that which is directly underneath the excavation, one of its constituent parts, and to store it when thus separated and collected. If the well and the surrounding soil are both owned by the same proprietor, the water in such a well is still his absolute property, and remains his land until he sees fit to separate it and make it a commodity. If the well and the surrounding land are owned by different persons, the ownership of the water is changed as it passes from the surrounding soil into the well, in a way similar to that by which soil carried by a river from the territory of one proprietor to that of another is changed. In the absence of all other obligations than such as spring from the absolute ownership of land, there can be no reason why the owner of land adjoining or surrounding such a well may not, in this view of the law, lawfully use upon his own territory means to prevent that which is his own land from separating from it by the operation of natural causes, and from passing beyond his own dominion. If his thus keeping his own

makes the adjacent land of his neighbor less valuable, or interferes with its accustomed use, it is the *damnum absque injuria* for which no action lies.

It is not necessary, however, for the decision of the present case, to determine between the view of the law of percolating water held in most of the decisions above cited, and that held in *Bassett* v. *Salisbury Manuf. Co.* and *Swett* v. *Cutts* by the Supreme Court of New Hampshire. Adopting either view, upon the construction which we give to the plaintiff's deed, the result is the same. A grantor can so grant and covenant, that he and those claiming under him will be precluded from interfering with the supply of even percolating water to the dominant land, and may thus prevent uses of the servient land which are reasonable, and would be otherwise justifiable. *Whitehead* v. *Parks*, 2 H. & N. 870. *Johnstown Cheese Manuf. Co.* v. *Veghte*, 69 N. Y. 16.

Construing the plaintiff's grant, What was intended by, and what is the fair and reasonable construction to be given to the clause, " together with the privilege of drawing water from a pipe laid in the ground from a well on my adjoining land to said Davis house as now used ? " In how much of the grantor's adjoining lands did the plaintiff acquire an easement, and what was its nature and extent ? She plainly took an easement in all that would have passed by a conveyance of the well as a term of description, and in so much of the adjacent soil as was necessary to the security and integrity of the well as a structure, and to the preservation of the pipe in a condition for use. The concluding words of the clause, " as now used," are naturally to be referred to those next preceding, and if so, serve only to limit the use of the privilege, whatever it may be, to the Davis dwelling-house. If, however, they refer back to the word " privilege," they still relate to and limit the extent to which water may be drawn, or the use to which it may be put, and do not relate to the words " on my adjoining land," or of themselves imply an obligation on the part of the grantor to continue to use his land in the same manner as at the date of the conveyance. The clause does not in terms stipulate that the house shall receive an adequate supply of water. It does not appear that the pipe was at the bottom of the well, and it is matter of common knowledge

that the depth of water in a well may be expected to vary with the season, and with the amount drawn.

The language of the clause is satisfied by holding that it gives the plaintiff the right to draw water whenever that portion of land designated as the well, remaining intact as a structure adapted to receive and hold such water as may percolate into it, contains water which will gravitate to the house through the pipe. It is impossible to know in what direction percolating water finds its way into a well ; perhaps only through the bottom of the excavation, and perhaps through the surrounding, as well as the subjacent land. Its ways of approach, and its amount, vary with the operation of obscure natural causes, not controllable by the owner of the land through which it passes. If the grant of such a well, or of the privilege of drawing water from it, were held to impose an obligation upon all the land from which the well might derive a supply of water, the burden would be very indefinite, uncertain, and shifting, and would tend, without any adequate corresponding benefit, to prevent the improvement of land by buildings, and its use for mining, quarrying, and many other useful purposes. Such a result would be contrary to the public good ; and the nature and tendency of the burden have been held to be good reasons for the denial of the existence of any such obligation. *Haldeman* v. *Bruckhart*, 45 Penn. St. 514. An intention to subject a large territory to such a burden for the benefit of a single house lot is not to be lightly presumed.

Applying to the present case a test which has been used in the decision of cases not entirely dissimilar, the plaintiff, as the owner of an easement, can have no greater right than she would have had if the well and pipe had been conveyed to her as land. See *Bliss* v. *Greeley*, 45 N. Y. 671 ; *Chesley* v. *King*, 74 Maine, 164. If the plaintiff's deed, in addition to her house lot, had also included all the land to the north, except that subsequently conveyed to the defendant, so that the plaintiff's land included the well and was bounded on the east by her line fifteen feet distant from the well, would she have had the right to recover for injury to the supply of water by the defendant's excavations? Plainly not, unless the right to a well fed by percolating water includes the right to have such water in other lands find its way to the well without any interference by the adjoining owner;

and, as we have seen, there is no such right in the absence of a grant, or of right otherwise acquired, but the adjoining owner may deal with percolating waters, and with his land. if not wholly as he pleases, still, under all the authorities, in any reasonable way, doing such acts as the defendant did in the present case.

There is in the report nothing which makes it reasonable to suppose that the parties to the plaintiff's deed intended that the remainder of the thirty acres, of which her lot was but a small part, should be burdened with the servitude of maintaining the water in the well at a height which would enable her to draw water from the pipe.   The land was on a public street in Haverhill, which had then been a city for nearly ten years ; the street was parallel with, and not far from, the Merrimac River, and the city was supplied with water for domestic purposes by an aqueduct company.   Under such circumstances, it seems certain that, if it had been the intention of the parties to impose upon the remaining land of the vendor an obligation, in favor of the plaintiff's house lot, which might prevent the improvement for many purposes of a tract much more than a hundred times larger than the dominant land, that intention would have been expressed in clear and definite terms.   The creation of such an obligation is not a usual or natural part of such a transaction as the sale of a city house lot, and an intention to make it ought to be clearly shown.   In the case of *Johnstown Cheese Manuf. Co.* v. *Veghte, ubi supra,* both the circumstances and the language of the deed made it evident that it was the intention of the parties to place the whole of the land retained by the grantor under an obligation to secure to the dominant land the necessary supply of water, and the language of the deed was particularly full.   In *Bliss* v. *Greeley, ubi supra,* however, the deed was similar to that in the present case, and the grant was held to be limited and specific, and not to impose any burden upon the remainder of the grantor's farm.   The covenant to warrant and defend adds nothing to the extent of the grant, and no greater right passed as an appurtenance than was expressed in the description of the premises conveyed.   Although, in the condition of things which existed in 1891, the excavation on the defendant's land cut off the supply of water from the well, it cannot be said that when

the plaintiff obtained her deed, thirteen years before, an obliga-
tion to keep the land on which the excavation was afterwards
made at its then level was necessary to the beneficial use of the
well as a means of supplying the plaintiff's house with water.
The case has no analogy to that of the drain, which was held to
pass as appurtenant, if necessary for the beneficial enjoyment
of the house, in the deed considered in *Thayer* v. *Payne*, 2 Cush.
327, on which the plaintiff relies.

*Judgment on the finding for the defendant.*