McAULIFFE & BURKE COMPANY *vs.* BOSTON HOUSING
AUTHORITY & another.

Suffolk.    December 28, 1955. — April 2, 1956.

Present: QUA, C.J., RONAN, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Redevelopment of Land.    Eminent Domain,* Validity of taking.

A landowner whose land was taken by eminent domain for the purposes
   of a project undertaken by a housing authority under the Massachu-
   setts land redevelopment law had standing to challenge the validity
   of the taking.    [30–31]
The fact that a housing authority undertaking a project under the Massa-
   chusetts land redevelopment law with respect to a certain area found
   to be substandard and decadent excluded from the project and did
   not take several parcels located within the external boundaries of such
   area did not invalidate the taking of the rest of the area.    [31–32]
On the facts, it could not be said that the plan of a project undertaken
   under the Massachusetts land redevelopment law was inadequate with
   respect to relocation of residents in the project area compelled to
   remove therefrom.    [32–33]

BILL IN EQUITY, filed in the Superior Court on June 16,
1955.

The suit was reported by *Forte,* J., without decision.

In this court the case was submitted on briefs.

*Lewis H. Weinstein,* for Boston Housing Authority, &
*William L. Baxter,* Corporation Counsel, for the city of
Boston.

*R. Gaynor Wellings,* for the plaintiff.

RONAN, J.    This is a bill in equity, as amended, for a
declaratory decree brought by the owner of a parcel of land
located within an area known as the New York Streets
Project and taken by the Boston Housing Authority as a
decadent area for the purpose of its redevelopment.    The
bill is also brought against the city of Boston.    The defend-
ants have appealed from an interlocutory decree overruling
their demurrer.    The suit was submitted in the Superior

Court upon a statement of agreed facts and was reported without decision to this court.

The plaintiff had its principal place of business at 19–29 Troy Street which premises consisted of the land and three buildings occupied by it in conducting its business of selling plumbing and heating supplies.

The Boston Housing Authority (hereinafter called the authority), purporting to act under G. L. (Ter. Ed.) c. 121, especially under §§ 26J, 26P, and 26JJ–26MM, as appearing in St. 1946, c. 574, § 1, as amended, has declared and found that a certain area in which the plaintiff's premises are situated was a substandard and decadent area and has undertaken a project for the assembly and redevelopment of said area under "The Land Assembly and Redevelopment Plan 'New York Streets' Project." The authority also made its "Declaration of Findings Relative to the New York Streets Land Assembly and Redevelopment Project." Copies of the plan and of the declaration were included in the statement of agreed facts. The findings of the authority set forth in the declaration amply support its conclusion that the project area was a substandard and decadent area as defined in G. L. (Ter. Ed.) c. 121, § 26J, of the housing authority law. The area was predominantly occupied by dwellings which, by reason of dilapidation, overcrowding, faulty arrangement and design, lack of ventilation, light and sanitation, and lack of repairs, were unfit for human habitation. The declaration then contained diverse details readily tending to lead one to the conclusion that the authority reached.

The plan describes the project area as bounded by Dover Street on the south, Washington Street on the west, the retaining wall of a railroad on the north, and Albany Street on the east. There are then carved out of this description seven parcels, all located by metes and bounds and all abutting on one of the peripheral street boundaries just mentioned except in the case of one lot containing only 7,120 square feet and abutting upon an interior street contained within the area as generally described. This last

mentioned lot is the only parcel which cannot be reached except by going over land actually taken. There is no uncertainty as to the exact location and size of area condemned. The description of the land is not ambiguous. None of the seven parcels has been taken or intended to be taken by the authority.

The first contention of the plaintiff is that the authority was empowered to take all the land within the peripheral boundaries of the area or nothing. Each of these seven parcels was especially described by metes and bounds together with its total area. All but one of them abutted upon one of the existing streets now forming one of the external boundaries of the project. The authority has in fact taken all the land located within the peripheral boundaries of the area except these parcels. The plaintiff contends that a taking of less than the entire plot declared to be substandard or decadent is invalid.

The defendants contend that the plaintiff has no standing to raise this point. The extent and the necessity for a taking rest in the sound discretion of the board to which the subject has been entrusted, *Talbot* v. *Hudson*, 16 Gray, 417; *Lynch* v. *Forbes*, 161 Mass. 302; *Boston* v. *Talbot*, 206 Mass. 82, although the purpose for which the land was taken is a question of law and is open to judicial review. *Salisbury Land & Improvement Co.* v. *Commonwealth*, 215 Mass. 371. *Allydonn Realty Corp.* v. *Holyoke Housing Authority*, 304 Mass. 288.

The exercise of eminent domain is one of the highest attributes of sovereignty, and where the power is granted by statute to an administrative body there must be a compliance with the statute to effect a valid exercise of the power. *Lajoie* v. *Lowell*, 214 Mass. 8. *Byfield* v. *Newton*, 247 Mass. 46. *Watertown* v. *Dana*, 255 Mass. 67. *Walker* v. *Medford*, 272 Mass. 161. *Malinoski* v. *D. S. McGrath, Inc.* 283 Mass. 1. *Holliston* v. *Holliston Water Co.* 306 Mass. 17. A landowner whose property has purportedly been taken has the right to attack the validity of the taking by showing that certain essential steps prescribed by the statute have been

omitted or have been performed in a manner contrary to or different from that required by the statute. We think the plaintiff whose land has been taken may challenge the validity of the taking. *N. Ward Co.* v. *Street Commissioners of Boston,* 217 Mass. 381. *Lajoie* v. *Lowell,* 214 Mass. 8. *Brown* v. *Peabody,* 228 Mass. 52. *Breckwood Real Estate Co.* v. *Springfield,* 258 Mass. 111. *Radway* v. *Selectmen of Dennis,* 266 Mass. 329. *Suburban Land Co. Inc.* v. *Billerica,* 314 Mass. 184.

The plaintiff points out that the project and plan used in the instant case did not deal with the entire area as determined by the authority but dealt with only a part of the area and was therefore inconsistent with the definition of a project and plan as set forth in G. L. (Ter. Ed.) c. 121, § 26J, as amended by St. 1953, c. 647, §§ 13, 14, which speaks in terms of an area and not as to portions of a decadent, substandard or blighted open area. It is contended that nothing less than the entire substandard, decadent or blighted open area is required as the basis for the operation by the authority of the power granted to it as shown, for example, by §§ 26JJ, 26KK, and 26BB made applicable by § 26MM to land assembly and redevelopment projects.

An examination of the statutes discloses no legislative intent that the authority must in all cases take all the land located between certain streets or bounded by natural boundaries even if there may be within such an area modern, well kept structures which the members of the authority, in their considered and honest judgment, decided should not be razed and destroyed and which if left existing will fit in with their scheme of redevelopment of the area and save the public the expense of a taking of a particular lot.

It may at times happen, as it did undoubtedly here, that within the entire substandard district there are a few parcels with the structures thereon that in the sound judgment and discretion of the members of the authority are in harmony with the contemplated use to which the locus is to be devoted. Structures suitable to and consistent with the new use to which the area is to be put need not be destroyed

merely because they happen to be located within a sub-standard and decadent area. Indeed, such a situation appeared in *Papadinis* v. *Somerville*, 331 Mass. 627, and in *Despatchers' Cafe Inc.* v. *Somerville Housing Authority*, 332 Mass. 259, where it was decided that the statutes governing "Land Assembly and Redevelopment Projects," G. L. (Ter. Ed.) c. 121, Part IV, inserted by St. 1946, c. 574, and as amended by St. 1953, c. 647, were valid although the precise question now presented was not decided. Of a some-what similar question it was said in *Berman* v. *Parker*, 348 U. S. 26, 36, in answer to an objection of a department store owner whose place of business was located within a condemned area that his business should not be taken, that it was not "the function of the courts to sort and choose among the various parcels selected for condemnation." It has been held that all the land included in a substandard or decadent area need not be taken. Omission to take the seven particular lots did not invalidate the taking of the remainder of the area. *Boro Hall Corp.* v. *Impellitteri*, 128 N. Y. Sup. (2d) 804, affirmed 130 N. Y. Sup. (2d) 6. *Bleecker Luncheonette, Inc.* v. *Wagner*, 141 N. Y. Sup. (2d) 293, affirmed 143 N. Y. Sup. (2d) 628. Compare *Oliver* v. *Clairton*, 374 Pa. 333.

The second contention of the plaintiff is that ample pro-vision is not made for those who are to be deprived of their housing facilities. The statute, § 26J as amended, requires that the "'Land assembly and redevelopment plan' . . . shall be sufficient to indicate . . . [the] method for the relocation of persons living in the area, if it is to be cleared, and availability of and the means by which there will be provided dwelling units for such persons substantially equal in number to the number of dwelling units to be cleared from such area." The authority as shown by the plan states that it operates 14,339 units including 502 in the planning stage in 1955; that on September 1, 1954, the date of the plan, the project area was occupied by 968 dwelling units, 114 of which were vacant; that during the course of a year eleven per cent or 1,500 dwelling units

became available and vacant; that there is a sufficient number of available dwelling units in Boston to absorb persons who will be compelled to remove from the project area; that for all families or persons eligible for public housing accommodations will be furnished in the dwelling units furnished by the authority; that for all families of more than one person who are not eligible for public housing the authority will find and make available safe and decent privately owned dwelling units at rentals such families can afford to pay; and that for single persons ineligible for public housing the authority will furnish them with addresses of privately owned rooms or dwelling units. The plan in this respect cannot be said to be inadequate.

It follows that the interlocutory decree overruling the demurrer has now become immaterial and may be affirmed, and a final decree should be entered declaring that the taking made of the plaintiff's property on or about July 27, 1955, was valid.

*So ordered.*