LUTHERAN SERVICE ASSOCIATION OF NEW ENGLAND, INC. *vs.*
METROPOLITAN DISTRICT COMMISSION.

Suffolk. January 8, 1986. — April 17, 1986.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Practice, Civil,* Action in nature of mandamus. *Eminent Domain,* Authority
for taking.

As matter of discretion, this court concluded that it would be inappropriate
to grant relief in the nature of mandamus compelling the Metropolitan
District Commission to acquire by purchase or by eminent domain the
parcel of land referred to in St. 1973, c. 1225, since the power to take
the land resides in the Legislature, which may do so if it wishes. [341-345]

CIVIL ACTION commenced in the Superior Court Department
on January 18, 1979.

The case was heard by *Paul G. Garrity,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Mark S. Bourbeau,* Assistant Attorney General (*Ernest P.
DeSimone,* Special Assistant Attorney General, with him), for
the defendant.

*William R. Santo* for the plaintiff.

O'CONNOR, J. This is a civil action in the nature of man-
damus. G. L. c. 249, § 5. The plaintiff seeks an order compel-
ling the defendant Metropolitan District Commission (MDC)
to perform its alleged "statutory duty pursuant to Chapter 1225
of the Acts of 1973 which mandates that the [MDC] acquire
specifically designated property owned by [the] plaintiff for
public purposes by either purchase or eminent domain taking
pursuant to G. L. c. 79." After a trial, a judge of the Superior
Court ordered the MDC "to use its best efforts to acquire the
premises by purchase, assuming negotiations as to the price
can be concluded successfully within a reasonable time; other-
wise . . . to take the premises by eminent domain and to pay

plaintiff just compensation for such taking." The MDC appealed, and we transferred the case here on our own motion. We reverse the judgment below.

The judge found the following facts. Since 1871, the plaintiff has owned a tract of land containing approximately 175 acres adjacent to the Charles River in the West Roxbury section of Boston. That area has been known as the Sawmill Brook Valley and Brook Farm. Until the mid-1970's, the plaintiff maintained on the site a residential treatment facility for troubled teenagers known as Brook Farm Home. Early in the 1970's, in furtherance of its objective to acquire available land for recreational use and the preservation of open space, the MDC developed a plan to procure land connecting various outreaches of the Charles River. The plaintiff's land is within the area encompassed by the MDC plan.

The judge also found that, as a result of the efforts of the MDC and concerned citizens, the Legislature enacted St. 1973, c. 1225. That act is entitled "An Act directing the metropolitan district commission to acquire certain real property in the West Roxbury section of the city of Boston." Several relevant portions of the act are set forth in the margin.[1] Section 1 provides

---

[1] "SECTION 1. The metropolitan district commission is hereby authorized and directed to acquire for conservation, natural water storage of flood waters, historic, scenic and passive recreational purposes, approximately one hundred and seventy-nine acres of land adjacent to the Charles river in the West Roxbury section of the city of Boston, known as the Sawmill Brook valley and Brook farm.

". . . .

"SECTION 2. The metropolitan district commission shall also acquire a pedestrian right-of-way from the area known as Brook farm to the Memorial reservation known as John Elliot's Pulpit Rock, property of the Roxbury Historical Society. Said commission is hereby authorized to negotiate with the Holyhood Cemetery Association for access from the Sawmill Brook valley to the Veterans of Foreign Wars parkway owned by the commission, and may enter into an agreement, approved as to form by the attorney general, to exchange land for said purpose.

"SECTION 3. The existing cemetery area, Gethsemane Cemetery, so-called, consisting of approximately fifteen acres shall be excluded from the acquisition. For maintenance of perpetual care purposes an additional maximum of fifteen acres of cemetery land currently under cemetery permit but as not yet developed for cemetery use may be also excluded from the

that the MDC is "authorized and directed" to acquire the plaintiff's land, and § 7 provides that the acquisition shall be by purchase or by eminent domain. To meet the cost of acquisition, § 4 requires the State Treasurer, at the Governor's request, to issue and sell bonds of the Commonwealth in a sum not to exceed $2,200,000.

According to the judge's findings, in 1972, when the plaintiff first learned of the MDC's interest in acquiring the premises, the plaintiff was opposed to the plan, but thereafter acquiesced and relocated. Negotiations for purchase of the property by the MDC were ongoing into early 1975, but then there occurred a change in the administration of the MDC. By 1976, the plaintiff learned that the MDC was no longer interested in acquiring the property. The judge found that the plaintiff was "substantially adversely affected institutionally and financially both by the enactment of c. 1225 and by the [MDC's] failure to carry out its mandate to acquire the premises," and he determined that his "discretion should be exercised to grant the relief requested." The judge reasoned that St. 1973, c. 1225, "provided [the MDC] with a clear and unequivocal legal duty to perform a particular act which performance [the judge could] order in definite terms and [could] enforce if necessary," that there were funds available for the acquisition, and that no remedy other than mandamus existed.

The defendant challenges the plaintiff's standing to bring this action. The plaintiff does not contend that it has a private right beyond the right and interest of the public that the plain-

---

acquisition. Various support facilities essential to cemetery operation shall also be excluded from the acquisition. Appropriate right-of-ways shall be provided for cemetery use.

      " . . . .

"SECTION 7. Any land or land with buildings thereon for the acquisition of which an appropriation is made in this act shall be acquired by purchase or by eminent domain under chapter seventy-nine of the General Laws; provided, that no payment shall be made for the purchase of any such property until at least one independent appraisal of the value thereof has been made by a qualified disinterested appraiser; and, provided further, that the cost of such appraisal or appraisals shall be charged to said item of appropriation."

tiff's property be taken. Rather, the plaintiff argues that it has standing because "when the question is one of public right and the purpose is to procure the performance of a public duty, and no other remedy is open, a petitioner need not show that he has any special interest in the result: it is sufficient that as a citizen he is interested in the due execution of the laws." *Bancroft* v. *Building Comm'r of Boston,* 257 Mass. 82, 84 (1926). See *Sears* v. *Treasurer & Receiver Gen.,* 327 Mass. 310, 314-315 (1951); *Brooks* v. *Secretary of the Commonwealth,* 257 Mass. 91, 92-93 (1926); *Brewster* v. *Sherman,* 195 Mass. 222, 224-225 (1907). But see *Pilgrim Real Estate, Inc.* v. *Superintendent of Police of Boston,* 330 Mass. 250, 251-253 (1953), in which we held that a corporate plaintiff is not deemed to be a "citizen" interested in the administration of government and qualified to assert rights "which arise out of citizenship," *id.* at 252, and that therefore a corporation without a special interest of its own lacks standing to assert the public's right in a mandamus action. Because resolution of the question is unnecessary to our decision, we assume, without deciding, that the plaintiff has standing.

In the absence of an alternative remedy, relief in the nature of mandamus is appropriate to compel a public official to perform an act which the official has a legal duty to perform. *Massachusetts Soc'y of Graduate Physical Therapists* v. *Board of Registration in Medicine,* 330 Mass. 601, 605-606 (1953). Stated negatively, a court may not compel performance of a discretionary act, *Channel Fish Co.* v. *Boston Fish Mkt. Corp.,* 359 Mass. 185, 187 (1971); *Scudder* v. *Selectmen of Sandwich,* 309 Mass. 373, 375-377 (1941), and, even if the act sought to be compelled is ministerial in nature, relief in the nature of mandamus is extraordinary and may not be granted except to prevent a failure of justice in instances where there is no other adequate remedy. *Coach & Six Restaurant, Inc.* v. *Public Works Comm'n,* 363 Mass. 643, 644 (1973).

Ordinarily, then, our first inquiry would be whether St. 1973, c. 1225, requires, or only empowers, the MDC to acquire the plaintiff's real estate. We need not pursue that inquiry, however, because we are satisfied that, even if c. 1225 requires

the MDC to take the plaintiff's property by eminent domain, it would be inappropriate for us to grant the relief the plaintiff requests.

Mandamus relief is not a matter of right but of sound judicial discretion. *Coach & Six Restaurant, Inc.* v. *Public Works Comm'n, supra* at 645. Since the action is of equitable origin, all issues of law and discretion are open for our consideration, and we may decide the case on our own judgment. *Crawford* v. *Inspector of Barnstable,* 356 Mass. 174, 175 (1969). See *Hanrihan* v. *Hanrihan,* 342 Mass. 559, 564 (1961); *Muir* v. *Leominster,* 2 Mass. App. Ct. 587, 588 (1974).

The power of eminent domain is "one of the highest attributes of sovereignty." *McAuliffe & Burke Co.* v. *Boston Hous. Auth.,* 334 Mass. 28, 30 (1956). The power resides in the Legislature. *Burnham* v. *Aldermen of Beverly,* 309 Mass. 388, 389 (1941). *Boston* v. *Talbot,* 206 Mass. 82, 89-90 (1910). See *Caleb Pierce, Inc.* v. *Commonwealth,* 354 Mass. 306, 310 (1968). The Legislature, if it wishes, may enact a statute taking the plaintiff's property directly. Our intervention, therefore, is unnecessary. Accordingly, we exercise our discretion by declining to grant the extraordinary relief requested.

*Judgment reversed.*